UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARCO'S FRANCHISING, LLC,

      Plaintiff,

v.                                   Case No. 8:06-cv-00670-T-17-TGW

MARCO'S ITALIAN EXPRESS, INC.,

      Defendant.

_____/

**ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This cause comes before the Court on Plaintiff's Motion for Partial Summary Judgment filed February 28, 2007 (Dkt. 29), Plaintiff's Brief in Support of its Motion for Partial Summary Judgment filed February 28, 2007 (Dkt. 29), Defendant's Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment filed March 12, 2007 (Dkt. 38), Plaintiff's Supplement to its Motion for Partial Summary Judgment filed April 16, 2007 (Dkt. 41) and Defendant's Brief in Opposition to Plaintiff's Supplement to its Motion for Partial Summary Judgment filed April 27, 2007 (Dkt. 43), as well as Defendant's Motion for Summary Judgment filed February 28, 2007 (Dkt. 34) and Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment filed March 12, 2007 (Dkt. 37). For the reasons set forth below, both Plaintiff's Motion for Partial Summary Judgment and Defendant's Motion for Summary Judgment are **DENIED**. The following facts are accepted as true for the purpose of resolving the pending motions.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a franchisor of restaurants named "Marco's Pizza" that offer pizza, sandwiches, salads and bread for consumption on and off the premises. (Dkt. 29). Beginning with its first restaurant in the Toledo, Ohio area in 1978, Plaintiff has expanded to a current total of approximately 150 restaurants in Arizona, Indiana, Nevada, Michigan, North Carolina, Wisconsin and Ohio. (Dkt. 29). Since May 6, 1986, the "Marco's Pizza" mark has been protected by a trademark registration with the United States Principal Register[1]. (Dkt. 29).

On May 4, 1998, over a decade after the establishment of Plaintiff's chain of restaurants and the registration of the "Marco's Pizza" trademark, Defendant began to sell pizza and related goods under the name "Marco's Italian Express," with a single restaurant initially located at 1519 Main Street in Dunedin, Florida and, subsequently, moved to 11411 Starkey Road in Largo, Florida. (Dkt. 29). Plaintiff has introduced no facts indicating that Defendant was aware of Plaintiff's preexisting chain of restaurants or trademark registrations. (Dkt. 29).

In the middle of 1999, alerted to the existence of "Marco's Italian Express," Plaintiff sent a letter to Defendant, stating that Defendant's name infringed upon the federal trademark registration mentioned above and demanding that Defendant cease such unlawful use immediately. (Dkt. 29). Defendant responded to the letter but declined to forfeit the name, claiming entitlement to use of "Marco's Italian Express" to sell pizza and related goods. (Dkt. 29). Until recently, Plaintiff's absence from the Florida market precluded any pursuit of a remedy regarding Defendant's allegedly unlawful use of "Marco's Italian Express." (Dkt. 29).

---

[1] Specifically, the United States trademark registration owned by Plaintiff for "Marco's Pizza" is numbered 1392554, permitting use of the trademark by Plaintiff for the sale of pizza for consumption on or off the premises as well as for restaurant and carryout services. Plaintiff also owns other less relevant marks related to the "Marco's Pizza" name. (Dkt. 29).

Presently, Plaintiff is beginning to examine expansion opportunities in Florida, including the Orlando and Tampa areas. (Dkt. 29). To fulfill its overall expansion goals with respect to Tampa, Plaintiff has entered into an Area Representative Agreement for development of the Tampa Designated Market Area, an agreement that authorizes the development of 99 "Marco's Pizza" restaurants. (Dkt. 29). On March 25, 2007, Plaintiff opened its first "Marco's Pizza" restaurant near Tampa at 9338 Little Road in New Port Richey. (Dkt. 41). Plaintiff is currently planning several other locations in the Tampa area, in accordance with the Area Representative Agreement. (Dkt. 29).

Due to Defendant's continued operation of "Marco's Italian Express" and Plaintiff's recent entry into Florida, Plaintiff renewed its demands in 2006 that Defendant discontinue use of the name "Marco's Italian Express" in connection with the restaurant at 11411 Starkey Road in Largo, Florida. (Dkt. 29). After receiving a letter from Plaintiff requesting forfeiture of the name "Marco's Italian Express," Defendant once again disregarded the demands. (Dkt. 29).

Seeking to expand into the Tampa area pursuant to the Area Representative Agreement, while at the same time protecting and preserving the "Marco's Pizza" trademark and the "high quality food, excellent service and great value" that the "Marco's Pizza" mark allegedly represents, (Dkt. 29), Plaintiff brought this action against Defendant after the second letter was met with inaction, alleging that Defendant's continued use of a confusingly similar restaurant name will detract from the "Marco's Pizza" mark, erode customer satisfaction, lessen consumer expectations, and adversely effect Plaintiff's expansion goals. (Dkt. 9).

In its complaint filed June 1, 2006, Plaintiff put forth four counts related to Defendant's allegedly unlawful use of "Marco's Italian Express," including: 1) Federal trademark infringement under 15 U.S.C. § 1114 (2006) and 15 U.S.C. § 1116-18 (2006), 2) False

designation of origin under Section 43(a) of the Lanham Act as stated in 15 U.S.C. § 1125(a) (2006), 3) Violation of the Florida Unfair Trade Practices Act, as outlined in Fla. Stat., Ch. 501.201-13, and 4) Injury to business reputation under Fla. Stat., Ch. 495.151. (Dkt. 9). In conjunction with the above claims, Plaintiff requested preliminary and permanent injunctive relief, an accounting for Defendant's profits and Plaintiff's damages, surrender of all materials constituting infringement, and attorney's fees and costs. (Dkt. 9).

On February 28, 2007, Plaintiff filed a Motion for Partial Summary Judgment, seeking summary judgment as to its claims for injunctive relief to prevent continued use of the name "Marco's Italian Express." (Dkt. 29). Defendant filed its Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment on March 12, 2007. (Dkt. 38).

Simultaneous to Plaintiff's Motion for Partial Summary Judgment, Defendant also filed its own Motion for Summary Judgment, urging dismissal of Plaintiff's action mainly due to lack of standing, on February 28, 2007. (Dkt. 34). Plaintiff filed its Brief in Opposition to Defendant's Motion for Summary Judgment on March 12, 2007. (Dkt. 37).

## STANDARD OF REVIEW

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine issue of material fact if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party . . ." *Matsushita Elec.*

4

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The evidence presented must be construed in favor of the non-moving party, and that party must receive the benefit of all favorable inferences that can be drawn from that party's evidence. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*. 477 U.S. at 249.

## DISCUSSION

**I.    Plaintiff's Motion for Partial Summary Judgment**

In its Motion for Partial Summary Judgment, filed February 28, 2007, Plaintiff requests injunctive relief related to the four counts outlined above, briefly restated as follows: 1) Federal trademark infringement, 2) False designation of origin, 3) Violation of the Florida Deceptive and Unfair Trade Practices Act, and 4) Injury to business reputation. (Dkt. 29). Although Plaintiff sought both preliminary and permanent injunctive relief in its Complaint, filed June 1, 2006, (Dkt. 9). Plaintiff's Motion for Partial Summary Judgment involves only a request for permanent injunctive relief. (Dkt. 29). The standard for the granting of a preliminary injunction and the granting of a permanent injunction through the device summary judgment are very different. *See E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imps., Inc.*, 756 F.2d 1525, 1532 (11th Cir. 1985). No arguments have been made with respect to a request for preliminary injunctive relief in Plaintiff's Motion for Partial Summary Judgment. (Dkt. 29). Accordingly, the Court will analyze the evidence as it relates to the request of a permanent injunction, as opposed to that of a preliminary injunction.

### a.    Legal Standard

The legal standards for Counts I, II and IV are extremely similar. Regarding Count I,

"[t]o establish a prima facie case in an ordinary trademark infringement suit [under 15 U.S.C. §

1114 and 15 U.S.C. § 1116-18], a claimant need only demonstrate that: (1) it enjoys enforceable

rights in its mark, and (2) the alleged infringer adopted a mark that is the same or confusingly

similar." *SunAmerica Corp. v. Sun Life Ins. Co. of Can.*, 77 F.3d 1325, 1334 (11th Cir. 1996).

Similarly, for Count II, "[t]he standard for proof of liability under § 43(a) [of the Lanham Act as

stated in 15 U.S.C. § 1125(a)] is [whether there exists a] 'likelihood of confusion resulting from

the defendant's adoption of a trade dress similar to the plaintiff's.'" *Kason Indus. v. Component

Hardware Group, Inc.*, 120 F.3d 1199, 1203 (11th Cir. 1997). Finally, with respect to Count IV,

"[i]f the plaintiff holds a distinctive trademark . . . [and] the defendant has made significant use

of a very similar mark," enough proof exists to prove dilution under Fla. Stat., Ch. 495, §

495.151. *Freedom Sav. & Loan Ass'n v. Way.* 757 F.2d 1176, 1186 (11th Cir. 1985).

The legal standard for Count III, in this particular circumstance, is derivative of the other

counts. Under Count III, "[e]ngaging in trademark infringement is an unfair and deceptive trade

practice that constitutes a 'violation of [the Florida Deceptive and Unfair Trade Practices Act,

Fla. Stat., Ch. 501.201-13].'" *Sun Prot. Factory, Inc. v. Tender Corp.*, No.

604CV732ORL19KRS. 2005 WL 2484710, at *13 (M.D. Fla. Oct. 7, 2005). Thus, the violations

alleged in Count III will be proven if the elements of trademark infringement have been

established.

Because the legal standards for the above four counts are either extremely similar or

dependent upon one another, "the court [may] analyze these claims simultaneously." *Contemp.

Rest. Concepts, Ltd. v. Las Tapas-Jacksonville, Inc.*, 753 F. Supp. 1560, 1562-63 (M.D. Fla.

1991). "[The Eleventh Circuit has] established two elements that [a plaintiff has] to prove to merit injunctive relief [with respect to the above four counts]: (1) that [the plaintiff] has trademark rights in the mark or name at issue . . . and (2) that the defendant adopted a mark or name that was the same, or confusingly similar to the plaintiff's mark, such that there was a likelihood of confusion for consumers as to the proper origin of the goods created by the defendant's use of the [plaintiff's] name in [its] trade." *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1512 (11th Cir. 1984).

### b.     Existence of Trademark Rights in the Mark or Name at Issue

The first element Plaintiff needs to prove in order to obtain permanent injunctive relief is the existence of trademark rights in the mark or name at issue. *Id.*

"A certificate of registration of a mark . . . [is] prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate." 15 U.S.C. § 1057(c) (2006). "To the extent that the right to use the registered mark has become incontestable under [15 U.S.C. § 1065], the registration shall be *conclusive* evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115 (2006) (emphasis added).

In support of the first element, Plaintiff asserts the existence of valid trademark registrations that would give it rights to use the words and designs embodied by "Marco's Pizza," for pizza consumption on and off the premises, as well as for restaurant and carryout services. Plaintiff submits a certificate of registration, recognized on May 6, 1986, as prima facie

evidence of such rights. 15 U.S.C. § 1057(c). Because Plaintiff's trademark has been in continuous use since the time of registration, for a period of more than five years and is still in use, and meets the other requirements outlined by 15 U.S.C. § 1065, "the right of the registrant to use such registered mark in commerce . . . shall be incontestable[2]." 15 U.S.C. § 1065 (2006). Since Plaintiff's right to use the registered trademark has become incontestable, "the registration shall be *conclusive* evidence of the validity of the registered mark." 15 U.S.C. § 1115 (emphasis added).

In response to the existence of an incontestable certificate of registration for the "Marco's Pizza" trademark and, therefore, conclusive evidence of valid trademark rights, Defendant introduces no contradictory evidence. (Dkt. 38). Specifically, Defendant does not contend that any of the exceptions to incontestability set forth in 15 U.S.C. § 1065 are applicable. (Dkt. 38). Although Defendant claims that Plaintiff "has refused to define any enforceable trademark rights . . . within which it has a legal right to demand a permanent injunction," the incontestable certificate of registration clearly defines such rights. *See* 15 U.S.C. § 1115. Aside from an allegation of insufficiency, Defendant fails to offer any legitimate challenge to the validity, superiority, or incontestability of Plaintiff's trademark. (Dkt. 38).

In addition to an allegation of insufficiency, Defendant criticizes Plaintiff's failure to define any "separate trade area" or "reputation zone" in which Plaintiff has enforceable trademark rights, pointing out the lack of an exact geographical limit to the injunction being sought. (Dkt. 38). However, Defendant cites no authority to indicate that such insufficiency has any bearing on the first prong of the test, which requires the plaintiff to provide evidence of the

---

[2] On August 11, 2005, a Combined Declaration of Use and Incontestability was filed in the United States Patent and Trademark Office and subsequently accepted, rendering the registration for "Marco's Pizza" incontestable. (Dkt. 29).

existence of valid trademark rights, not to define the geographical extension of such rights. *See Conagra*, 743 F.2d at 1512. Defendant also states that alleging any territorial trademark right requires a plaintiff to prove that it now has already entered into the trade area occupied by the defendant. (Dkt. 38). However, Defendant once again provides no relevant authority to indicate that such requirement actually exists. (Dkt. 38).

In light of the above, Plaintiff meets the first prong of the test to establish its claims, having presented uncontradicted, conclusive evidence of valid trademark rights in the "Marco's Pizza" mark. *See Conagra*, 743 F.2d at 1512.

c.  **Adoption of a Similar Mark or Name Leading to a Likelihood of Confusion**

The second element Plaintiff needs to prove in order to obtain permanent injunctive relief is that Defendant adopted a mark or name that is the same, or confusingly similar to Plaintiff's mark, such that there is a likelihood of confusion for consumers as to the proper origin of the goods or services provided by Defendant. *Conagra*, 743 F.2d at 1512.

> "Likelihood of confusion . . . is determined by analysis of a number of factors, including: (1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods, i.e., retail outlets or customers; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) the most persuasive factor on likely confusion is proof of actual confusion. *Id.* at 1514.

"[A] court must evaluate the weight to be accorded the individual factors." *Ambrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1538 (11th Cir. 1986). "The [strength] of [the] mark and the evidence of actual confusion . . . are the most important of the factors in this Circuit." *Freedom*, 757 F.2d at 1186. Although earlier cases of the Eleventh Circuit have indicated that no present likelihood of confusion may exist where the unauthorized use of a conflicting mark is confined to a distinct

9

and geographically separate market, "[m]ore recent cases have followed [the] more complex,

multifactor analysis [highlighted above]." *Safeway Stores, Inc. v. Safeway Disc. Drugs, Inc.*, 675

F.2d 1160, 1164 (11th Cir. 1982).

## 1.     Strength of Plaintiff's Mark

The first factor to be considered is the strength of the plaintiff's mark, which, as

mentioned above, is one of two factors given the most weight in the Eleventh Circuit. *Freedom*,

757 F.2d at 1186. Regarding the strength of a mark, "[t]here are four categories of distinctiveness

listed in ascending order of distinctiveness: (1) generic, (2) descriptive, (3) suggestive, and (4)

arbitrary or fanciful." *Coach House Rest., Inc. v. Coach & Six Rests., Inc.*, 934 F.2d 1551, 1559

(11th Cir. 1991). A generic term "suggests the basic nature of the [good or] service." *Id.* at 1560.

"A descriptive term merely identifies a characteristic or quality of a [good or] service." *Id.* "A

suggestive term suggests the characteristics of the [good or] service 'and requires an effort of the

imagination by the consumer in order to be understood as descriptive.'" *Id.* An arbitrary or

fanciful mark "bears no relationship to the [good or] service." *Id.*

The level of protection provided to a mark, and hence the strength of that mark,

corresponds to the level of distinctiveness, with little protection provided to generic marks and

the greatest protection provided to arbitrary or fanciful marks. *See Am. Historic Racing*

*Motorcycle Ass'n, Inc. v. Team Obsolete Promotions*, 33 F. Supp. 2d 1000, 1003 (M.D. Fla.

1998). For example, a descriptive mark "is not inherently distinctive . . . and may be protected

only if it acquires a secondary meaning." *Coach House*, 934 F.2d at 1560. On the other hand,

"[b]ecause a suggestive [mark] is inherently distinctive, no proof of secondary meaning is

required for it to be [protected]." *Id.* A registered mark that has become incontestable is

presumed to be "*at least* descriptive with secondary meaning, and therefore a relatively strong

mark." *Dieter v. B & H Indus. of Sw. Fla., Inc.*, 880 F.2d 322, 329 (11th Cir. 1989) (emphasis added).

As noted with respect to the first element in the section above, Plaintiff has already presented uncontradicted evidence of the incontestable, registered status of the "Marco's Pizza" mark. Thus, as explained in *Dieter*, Plaintiff's mark is at least descriptive with secondary meaning and, therefore, entitled to relatively strong protection. *See id.* As Plaintiff's mark is most likely suggestive, as opposed to merely descriptive with secondary meaning, the mark is entitled to even stronger protection. *See, e.g., Contemp. Rest. Concepts.* 753 F. Supp. at 1564 (where the phrase "Long Horn" in "Long Horn Steaks" was determined to be suggestive and entitled to strong protection because it did not describe the product and consumers could associate the phrase with the product only by using their imagination). Plaintiff has, therefore, presented evidence that the "Marco's Pizza" mark is a strong mark, deserving of protection.

"If a name is used by third parties other than the infringer, then it is less strongly protected than it would otherwise be." *Freedom*, 757 F.2d at 1182. Defendant, attempting to raise issue with the strength of Plaintiff's mark, has introduced a list of corporate name registrations in the State of Florida that contain some derivative of the formative name "Marco," arguing that consumers associate Plaintiff's mark with other sources of similar goods or services. (Dkt. 11).

In response to Defendant's challenge, Plaintiff cites Eleventh Circuit precedent as indicating that, "[t]he mere citation by [the defendant] of third party registrations . . . is not sufficient proof of the relative weakness of the mark." *Varitronics Sys., Inc. v. Merlin Equip., Inc.*, 682 F. Supp. 1203, 1207 (S.D. Fla. 1988). Aside from presenting a list of registered names,

Plaintiff points out that Defendant offers no additional proof of the extent to which the marks are used. (Dkt. 29).

"As stated in comment g to the Restatement of Torts [§] 729 (1938). 'The greater the number of identical or more or less similar trade-marks already in use on different kinds of goods, the less is the likelihood of confusion . . . .' The extensive third-party uses documented [should be given great weight]." *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 259-60 (5th Cir. 1980). Although Defendant has presented only a list of registered names, without any additional proof of the extent to which the marks are used. Defendant has raised a genuine issue of material fact as to the strength of Plaintiff's mark.

Nevertheless, although a genuine issue of material fact has been raised with respect to the strength of Plaintiff's mark, "we must carefully examine the remaining factors in order to determine whether, despite the fact that [Plaintiff's] mark [may] not [be] particularly strong. a reasonable jury could nonetheless conclude that [Defendant's] mark creates a likelihood of confusion between the two marks." *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966. 975 (11th Cir. 1983).

### 2.    Similarity Between Plaintiff's Mark and Defendant's Mark

The second factor to be analyzed is the similarity between the two marks. *Conagra*, 743 F.2d at 1514. When comparing disputed marks and determining the degree of similarity between them, "[the] consideration includes a comparison of the overall appearance, sound and meaning of the marks, as well as the manner in which the marks are used." *Harland*, 711 F.2d at 975.

Plaintiff argues that based on Eleventh Circuit case law the marks in question should be declared similar. (Dkt. 29). However, notwithstanding any determination of actual similarity between the two marks. Plaintiff has cited no case in which mere similarity of marks has been

sufficient to entitle a party to judgment as a matter of law, absent the existence of certain other factors not present in the current case.

For instance, Plaintiff claims that the current action is similar to the case in *Conagra*. (Dkt. 29). However, while the degree of similarity and the overall characteristics of the marks in dispute are similar to the marks disputed in the *Conagra* case, "[t]he most persuasive proof of likely confusion in [that] case was Conagra's proof of actual confusion," which the case here clearly lacks. *Conagra*, 743 F.2d at 1515. Similarly, in *Safeway*, where the two marks in dispute were once again determined to be so similar as to cause a likelihood of confusion, the plaintiff presented evidence of actual confusion, overlapping customers, and a substantial business presence in Florida to buttress the likelihood of confusion caused by the similarity of the marks, all of which are absent in the current case. *See Safeway*, 675 F.2d at 1167. Finally, although some circumstances in the current case are similar to *NEXxUS*, the court in that case once again found evidence of actual confusion as well as injurious intent, in addition to mere similarity of the marks. *See NEXxUS Prods. Co. v. Gentle Concepts, Inc.*, No. 87-1152-CIV-T-15, 1993 U.S. Dist. LEXIS 20281, at *26 (M.D. Fla. Apr. 26, 1993).

As noted above, although certain parallels can be drawn to other cases in which a likelihood of confusion was found, the existence of similarities between the marks in those other cases was always coupled either with actual confusion, injurious intent, a substantial business presence, or some other factor. Because none of those other factors is present in the current case, the similarity between the marks is simply not strong enough, in and of itself, to warrant judgment in favor of Plaintiff as a matter of law.

Defendant also directly questions the similarity of the marks, presenting a genuine issue of material fact for trial. (Dkt. 38). Although there is common use of the name "Marco's,"

13

Defendant claims that the most common format in which Plaintiff's "Marco's Pizza" mark is presented to the public is extremely distinguishable from Defendant's presentation of "Marco's Italian Express," with the former in a unique emblematic form and the latter in red and green bubble letters. (Dkt. 38). Thus, in addition to a lack of convincing case law in Plaintiff's favor, Defendant points out a genuine issue of material fact.

### 3. Similarity Between the Products and Services Offered by Plaintiff and the Defendant

The third factor taken into consideration in determining whether a likelihood of confusion exists is the similarity between the products and services offered. *Conagra*, 743 F.2d at 1514. "The greater the similarity between products and services, the greater the likelihood of confusion." *Playboy Enters., Inc. v. Frena*, 839 F. Supp. 1552, 1560 (M.D. Fla. 1993).

Although the products and services offered by both parties are similar, the Eleventh Circuit case law offered by Plaintiff in support of a finding of a likelihood of confusion indicates that certain other factors must be present *in addition to* similarity between the product and services offered in order to find that a likelihood of confusion exists as a matter of law. Those factors are once again absent in the current action.

For instance, in *Coach House*, where the court determined that a similar menu would attract the same customers and result in a likelihood of confusion, the court also found documented instances of actual confusion, influenced at least in part by the extreme similarity between the marks at the two restaurants in question. *See Coach House*, 934 F.2d at 1563. Here, there are no documented instances of actual confusion and the similarity of the two marks is heavily disputed. Likewise, in *AmBrit*, the court found not only documented instances of consumer confusion regarding trade dress, but also bad intent on the part of the defendant, both of which are absent in the current action. *See AmBrit*, 812 F.2d at 1545. Finally, in *Contemp*.

*Rest. Concepts*, another case cited by Plaintiff, "[t]he evidence of actual confusion [was] significant," in addition to the similarity between the two restaurants in question. *See Contemp. Rest. Concepts*, 753 F. Supp. at 1565.

Thus, as with the second factor analyzed above. the cases cited by Plaintiff in support of similarity between the products and services offered also involved actual confusion. bad intent, or some other additional factor. all of which combined to influence the court's decision in concluding that a likelihood of confusion existed. Here. those other factors are not present. Accordingly, the similarity between the products and services offered is simply not strong enough, in and of itself, to warrant judgment in favor of Plaintiff as a matter of law.

### 4.    Similarity of Purchasers and Retail Outlets

Another factor analyzed is the similarity of purchasers and retail outlets. *Conagra*. 743 F.2d at 1514. "Likelihood of confusion is more probable if the products are sold through the same channels *to the same purchasers*." *AmBrit*, 812 F.2d at 1541 (emphasis added).

Here. although it is undisputed that Plaintiff and Defendant both serve pizza in restaurants and offer pizza for carryout and delivery at nearly identical prices. Plaintiff presents no evidence that the parties compete for the same customers.

In addition to a lack of evidence with regard to overlapping purchasers, Defendant directly disputes Plaintiff's claim. (Dkt. 38). As Defendant points out, Plaintiff's only current location is in New Port Richey. over 34 miles away from Defendant's sole restaurant. (Dkt. 38). Defendant questions whether common consumers would travel that distance to purchase pizza. (Dkt. 38).

Thus, while Plaintiff has failed to present enough evidence of a similarity of purchasers, Defendant once again presents a genuine issue of material fact, preventing Plaintiff's entitlement to summary judgment.

### 5.    Similarity of Advertising Methods

The fifth factor to be analyzed, and one of only two factors in favor of Plaintiff, is the similarity of advertising methods. *Conagra*, 743 F.2d at 1514. "If a plaintiff and defendant both use the same advertising media, a finding of likelihood of confusion is more probable." *AmBrit*, 812 F.2d at 1542.

Although Plaintiff and Defendant use similar advertising methods, there has been no proof, as mentioned above, of similarity of purchasers. Similarly, there is no evidence that Plaintiff's advertising efforts are focused in the same geographical area as Defendant's or even overlap. Furthermore, while similarity of advertising methods is a factor in determining a likelihood of confusion, Plaintiff cites no cases in which similarity of advertising methods was determinative of a likelihood of confusion. Thus, although there is a similarity of advertising methods, the similarity of advertising methods is simply not enough to warrant judgment in favor of Plaintiff as a matter of law.

### 6.    Intent

"A finding of malicious intent on the part of the defendant will . . . incline a court to find a likelihood of confusion." *Freedom*, 757 F.2d at 1185. As conceded by Plaintiff, there is no evidence of any bad intent on the part of Defendant. (Dkt. 29).

### 7.   Actual Confusion

The final factor taken into consideration is evidence of actual confusion. *Conagra*, 743 F.2d at 1514. "Actual confusion by a few customers is the best evidence of likelihood of confusion by many customers." *Freedom*, 757 F.2d at 1185.

As acknowledged, there are no known instances of actual confusion at this point. Plaintiff, however, states that, "this circuit and this court have held that proof of actual confusion is not needed to establish a likelihood of confusion, especially where the plaintiff has not yet entered the same geographic area as the defendant." (Dkt. 29). Although Plaintiff is correct in quoting the Eleventh Circuit as not necessarily requiring evidence of actual confusion, the five cases cited by Plaintiff in support of that proposition do not compel judgment in favor of Plaintiff as a matter of law as each case is clearly distinguishable from the current case.

First, Plaintiff cites *E. Remy Martin* as an example of a case in which the Eleventh Circuit found a likelihood of confusion in absence of actual confusion. (Dkt. 29). However, Plaintiff's reference to *E. Remy Martin* is misplaced. In that case, the Eleventh Circuit granted a preliminary injunction with regard to a claim of trademark infringement. *See E. Remy Martin*, 756 F.2d at 1534. The granting of a preliminary injunction requires "showings of substantial likelihood of prevailing on the merits and substantial threat of irreparable harm," in addition to two other elements. *See id.* at 1532. Thus, as mentioned above, the granting of a preliminary injunction requires the court to apply a very different standard from the granting of a motion for partial summary judgment requesting permanent injunctive relief. *See id.* In essence, the first element of obtaining a preliminary injunction requires the plaintiff to show a substantial likelihood of being able to prove a likelihood of confusion, obviously a looser standard. *See id.*

Accordingly, Plaintiff's reference to *E. Remy Martin* is misplaced, as the requested relief and applicable standard are extremely different.

Likewise, Defendant's reliance on *Playboy* is misplaced. In *Playboy*, the defendant was not just marketing a product similar to the plaintiff's, but instead actually stealing the plaintiff's product and using it to make money for itself. *See Playboy*, 839 F. Supp. at 1557. In such a case, with such blatant trademark infringement, no proof of actual confusion was deemed necessary. *See id.* at 1561. Here, there are no allegations that Defendant has stolen Plaintiff's product and there is serious doubt regarding even the similarity of the trademarks. As such, *Playboy* neither compels nor supports a ruling for summary judgment.

Finally, in *Caterpillar, Inc. v. Nationwide Equip.*, 877 F. Supp. 611 (M.D. Fla. 1994), the defendant once again used the plaintiff's exact trademark in marketing products built from components manufactured by the plaintiff but assembled into a final product definitively different from the plaintiff's products. Although there were no instances of actual confusion, the evidence of trademark infringement in *Caterpillar* was overwhelming, as the defendant was using the plaintiff's exact trademark and passing off its goods as that of the plaintiff. *See id.* at 617. Additionally, the Court in *Caterpillar* analyzed the evidence in light of the granting of a preliminary injunction. *See id.* As with the other two cases analyzed above, *Caterpillar* neither compels nor supports a ruling for summary judgment in the current action.

The other two cases cited by Plaintiff in support of this proposition are similarly insignificant with regard to a motion for summary judgment. Plaintiff cites *Jewel Cos., Inc. v. Jewelcor Inc.*, No. 74-167-Orl-Civ-Y, 1980 U.S. Dist. LEXIS 14591, at *1 (M.D. Fla. Feb. 20, 1980). Although the Court in that case stated that actual confusion was not necessary to find a likelihood of confusion, a likelihood of confusion was not even found in that case. Finally, in

*Plough, Inc. v. Sun Fun Prods., Inc.*, No. 75-391-Orl-Civ, 1977 U.S. Dist. LEXIS 17646, at *2 (M.D. Fla. Jan. 27, 1977), the opinion of the Court indicated that several surveys had shown the existence of actual confusion among purchasing agents, clerks. consumers and purchasers. Evidence of actual confusion is admittedly unavailable in the current case. (Dkt. 29).

As actual confusion is one of the two factors given the greatest weight in the Eleventh Circuit, lack of such evidence is significant in evaluating Plaintiff's Motion for Partial Summary Judgment.

### d.    Disposition of Plaintiff's Motion for Partial Summary Judgment

Although valid trademark rights exist in the "Marco's Pizza" mark. Plaintiff has not proven an inevitable likelihood of confusion exists according to the seven-factor test as a matter of law. "The [strength] of [the] mark and the evidence of actual confusion. both of which favor the defendant in this case. are the most important of the factors in this Circuit." *Freedom*, 757 F.2d at 1186. Evidence related to the remaining factors is simply not strong enough to entitle Plaintiff to summary judgment. as determined by the analysis in the above sections.

Anticipating the possible failure of its arguments in support of a likelihood of confusion, Plaintiff urges the Court to adopt the "family of marks doctrine" outlined in *Nat'l Car Rental Sys., Inc. v. Nat'l Car Sales, Inc.*. No. 89-16-Civ-Oc-16. 1990 U.S. Dist. LEXIS 20973, at *1 (M.D. Fla. Mar. 19, 1990). (Dkt. 29). However, as that case involved the granting of a preliminary injunction, it is irrelevant to a motion for summary judgment in which Plaintiff seeks permanent injunctive relief as a matter of law.

In light of the above, and taking the facts in the light most favorable to the nonmoving party. as it is required to do, the Court cannot help but conclude that Plaintiff's Motion for Partial

Summary Judgment, based as it is either on case law that does not support a judgment as a matter of law or upon facts which Defendant asserts are still in dispute, must fail.

**II.     Defendant's Motion for Summary Judgment**

Defendant's Motion for Summary Judgment is based on several arguments, all of which are insufficient to entitle Defendant to judgment as a matter of law and most of which have been previously denied in prior motions.

**A.     Defendant's Arguments in Support of its Motion for Summary Judgment**

First, as in Defendant's Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment, Defendant claims that Plaintiff has not asserted trademark rights in any "separate trade area" in Florida, citing a Fourth Circuit case in support of such a requirement. (Dkt. 34). Defendant claims that "[f]ailure to allege, let alone prove undisputed facts which demonstrate prior common-law trademark rights in a disputed, overlapping geographical region is grounds to dismiss federal as well as state counts." (Dkt. 34). Without analyzing Plaintiff's response to this argument, the Court concludes that such an argument, unsupported by case law in the Eleventh Circuit, shall be disregarded for the purposes of summary judgment. Although prior cases of the Eleventh Circuit have indicated that no present likelihood of confusion may exist where the unauthorized use of a conflicting mark is confined to a distinct and geographically separate market, "recent cases have followed [the] more complex, multifactor analysis [performed above]." *Safeway*, 675 F.2d at 1164. Thus, Defendant's argument is without merit.

Second, Defendant states that the Area Development Agreement entered into by Plaintiff does not include Pinellas County, where Defendant owns and operates its only restaurant. (Dkt. 34). Additionally, Defendant points out that the only restaurant owned by Plaintiff currently in operation is over 34 miles away. (Dkt. 34). Defendant claims that this proves that there is

currently no ability of Plaintiff to assert any trademark rights. (Dkt. 34). As stated previously, the standard for trademark infringement revolves around the likelihood of customer confusion, *not* the geographic proximity of the two restaurants. Because Defendant cites no contrary case law from the Eleventh Circuit in support of this proposition, the argument will be ignored for the purposes of summary judgment. Thus, Defendant's second argument is also without merit.

Third, Defendant claims that the plaintiff listed on the complaint, Marco's Pizza, Inc., was formed in 2000, and does not have any valid trademark rights in the "Marco's Pizza" mark or the formative "Marco's" as it relates to the sale of pizza. (Dkt. 34). Defendant claims that because this is not a "typo" situation. Marco's Franchising. Inc. is unable to relate back the claim. (Dkt. 34). As a result, Defendant argues that there is no constitutional standing. (Dkt. 34). The same issues regarding standing have already been evaluated by this Court in favor of Plaintiff in the denial of Defendant's Motion to Dismiss. The prior rulings of this Court stand.

Fourth, Defendant claims that Plaintiff has failed to prove a likelihood of confusion. (Dkt. 34). As a result, Defendant apparently concludes that Defendant is entitled to summary judgment in its favor. Although this Court rules against Plaintiff's Motion for Partial Summary Judgment, the Court has never concluded that a valid claim of trademark infringement does not exist. Accordingly, although Plaintiff has not at this point proven a likelihood of confusion *as a matter of law*, the Court *has* concluded that Plaintiff has met its burden of proof in terms of the federal pleading requirements. Therefore, Defendant's argument is once again without merit.

Finally, Defendant claims that there was no subject matter jurisdiction over the current case at the time the complaint was filed. (Dkt. 34). Defendant also reiterates other arguments put forth in its previous Motion to Dismiss. The same issues have already evaluated by this Court in favor of Plaintiff. The prior rulings of this Court stand.

**B.      Disposition of Defendant's Motion for Summary Judgment**

In light of the above, and taking the facts in the light most favorable to the nonmoving party, as it is required to do, the Court cannot help but conclude that Defendant's Motion for Summary Judgment, based as it is primarily either on case law that does not support a judgment in favor of Defendant as a matter of law or upon arguments without any valid legal basis, must fail. Accordingly, it is

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Dkt. 29) and Defendant's Motion for Summary Judgment (Dkt. 34) be **DENIED**.

**DONE and ORDERED** in Chambers in Tampa, Florida, on this ___9th___ day of July, 2007.



ELIZABETH KOVACHEVICH
United States District Judge

Copies to: All parties and counsel of record